## STARK v. BALTIMORE SODA FOUNTAIN MFG. CO., Inc.
### No. 5300.

United States District Court,
D. Maryland, Civil Division.

Jan. 4, 1952.

Isidor Roman, Baltimore, Md., for plaintiff.

Jacob S. New, John O. Herrmann, Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the Trustee in Bankruptcy sues to recover an alleged preference under section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. The principal defenses are (1) limitations and (2) res adjudicata.

The preference, according to the plaintiff's contention, resulted from the re-taking by the defendant of chattels sold by it to the bankrupt under a conditional sale contract which the plaintiff asserts was defectively recorded under the applicable State law, Maryland Code of 1939, Art. 21, § 71, and could have been avoided at the instance of intervening creditors without notice.

The principal facts are these. Prior to September 18, 1947 the bankrupt, Leiberman, living in Baltimore City, who had been occupied as a life insurance agent or collector, decided to open a delicatessen store at 7913 Harford Road, Baltimore County, some distance north of the boundary line between Baltimore City and Baltimore County. Leiberman was personally acquainted with a Mr. Levy who was a salesman for the Baltimore Soda Fountain Manufacturing Company, Inc., which for many years had been engaged in Baltimore City in selling store fixtures. On September 18, 1947 Leiberman signed an order for delivery to his new place of business of a soda fountain and other office furniture, fixtures and equipment. The total purchase price was to be $9,300 of which amount he paid at the time of giving the order $1,000 deposit. The order stated that Leiberman would execute further papers to protect the title to the goods and to keep them in good repair and insure them for the benefit of the vendor. Levy knew that Leiberman was personally residing in Baltimore City but was informed by the latter that he proposed very shortly to move to Baltimore County so that his residence would be near his place of business. Subsequently under date of November 1, 1947 a formal printed and typewritten conditional sales contract was executed by Leiberman in which the Baltimore Soda Fountain Manufacturing Company, Inc., 101 S. Hanover Street, Baltimore, Maryland, agreed to sell the specified articles to Charles Leiberman, 7913 Harford Road, Baltimore County, Maryland. The applicable Maryland statute, Art. 21, § 71, provides that conditional sales contracts shall be void as to creditors without notice unless recorded in the City or County where the vendee resides unless the vendee is a partnership or corporation, in which event the recording is to be in the County or City where its principal place of business is located. The contract was recorded in Baltimore County on November 7, 1947. Shortly thereafter, on or about January 12, 1948, Leiberman moved his residence to Baltimore County a few blocks away from the store.

Prior to the delivery of the store equipment Leiberman paid $2,000 more and subsequently $150 more. The equipment consisted of 19 separate items listed and described in the conditional sales contract which further provided that the equipment "shall at all times be located at 7913 Harford Road, Baltimore, Maryland". The purchaser agreed to pay the total price of $9,300 plus $186 sales tax, of which $3,000 was payable before delivery and the balance of $6,486 was payable in 36 monthly installments evidenced by promissory notes; the title to the equipment was to remain in the seller until fully paid for; and in the event of the purchaser's default at any maturity date of the notes or failure to comply with the contract provisions or in the event of bankruptcy or insolvency, the full amount of the purchase price then unpaid to become immediately due and payable at the seller's option with right to the seller to enter upon the premises and take immediate possession, the seller to retain all payments made by the purchaser as liquidated damages, etc. Some of the equipment was delivered on October 25, 1947, but, as the store was a new one, it was not opened until November 8, 1947, the day after the final delivery and completion of the installation of the equipment for the store.

Leiberman's new commercial venture was not successful and after being in default for many months in the payment of deferred

purchase price installments, and after repeated requests for payment from the seller, Leiberman informed the latter that he could not pay as he had no money and on or shortly before September 30, 1948 he closed the store. On that date the seller instituted a replevin suit in the Circuit Court for Baltimore County against Leiberman in accordance with the Maryland practice and procedure and filed an approved bond. On the same day the writ of replevin was issued and on October 4, 1948 the sheriff filed a return of non est as to the summons to the defendant and also showing that he had replevied the articles seized as per schedules filed. On October 5, 1948 the summons was renewed to the first Monday in November and "copy of subpoena Nar in Replevin and Notice sent". On November 1, 1948 the sheriff again made a return of non est as to the summons. On February 14, 1949 the plaintiff in the replevin suit moved for and obtained a judgment by default and order of court that the judgment be entered as prayed.

On October 18, 1948 Leiberman filed his voluntary petition for adjudication in bankruptcy in this court and on the same day the order of adjudication was filed. The petition and schedules, prepared for Leiberman by a lawyer connected with the Legal Aid Society, made no reference to the store fixtures which had been replevied by the seller. On November 17, 1948 Alexander Stark was elected trustee in bankruptcy for Leiberman and on November 30, 1948 counsel for the trustee was appointed. On May 5, 1949 the trustee filed before the Referee in Bankruptcy a petition for recovery of the store equipment on the ground that the conditional sales contract was void because of intervening creditors without notice before recording. At first no point was made of the alleged defective recording but the then Referee in Bankruptcy suggested that the petition could also include that point. The Soda Fountain Company as respondent to that petition objected to the exercise of summary jurisdiction by the Referee who upheld that contention with consequent petition for review filed in this court where the Referee's order was affirmed on June 9, 1950. On June 28, 1950

the trustee filed notice of appeal to the United States Court of Appeals for the Fourth Circuit where, on August 5, 1950 an order was passed extending time for filing the record on appeal. The order of this court was affirmed by the Court of Appeals, 1 Cir., 185 F.2d 398, and this plenary suit was then filed by the trustee on March 18, 1951.

■ My conclusion of law is that the plea of limitations is good. By the Chandler Amendment of the Bankruptcy Act in 1938, Section 11e, 11 U.S.C.A. § 29, sub. e, now provides in material part as follows: "A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy".

This statutory period of limitations is applicable to and controlling of the present case where adjudication was on October 18, 1948 and this plenary suit was not instituted until more than two years thereafter on March 8, 1951. In Herget, Trustee in Bankruptcy, v. Central National Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656, the Supreme Court applied the statute in a similar case where a trustee in bankruptcy was suing to recover a preference. In the opinion the court reviews the historical development of limitations provisions in former Bankruptcy Acts and concludes that the 1938 Amendment was clearly intended by Congress to apply to such cases as this where the trustee is seeking by authority of the Bankruptcy Act to recover a preference. On page 8 of 324 U.S., on page 507 of 65 S.Ct. it is said: "The actual language used in Section 11e is clearly appropriate to an action under Section 60. Section 11, sub. e is not limited by its words to actions inherited by the trustee; nor does it discriminate against actions by the trustee accruing to him under the Act. It provides simply that the trustee must bring action on any claim in behalf of the estate within two years subsequent to the date of adjudication, or within such further time as

the federal or state law permits, provided that such law did not bar the action on the date when the petition was filed".

And with respect to the relation of the quoted provision in Section 11e referring to federal or state limitation statutes, it was further said in the opinion on page 9 of 324 U.S., on page 508 of 65 S.Ct.: "Inasmuch as the federal Bankruptcy Act has created the liability and has also fixed the limitation of time for commencing actions to enforce it, we have no occasion to consider the trustee's arguments concerning the applicability and construction of the Illinois statutes of limitation".

It was suggested by counsel for the plaintiff here that the plaintiff's effort to recover the preference by the summary jurisdiction of the Referee might be regarded as the institution of "proceedings in behalf of the estate" but in my view this contention is untenable. It has been decided in this very bankruptcy case that the Referee did not have summary jurisdiction and that the defendant was entitled to defend in a plenary proceeding which was instituted for the first time on March 8, 1951, more than two years after the occurrence of the alleged preference. A somewhat similar contention was overruled in Wells v. Place, D.C.Ohio, 92 F.Supp. 473, where the limitation period was applied in a plenary suit following proceedings before the Referee. See Wells v. Place, D.C.Ohio, 92 F.Supp. 477, where the limitation period was again applied to a suit by a trustee in bankruptcy to set aside an alleged fraudulent transfer under section 67 of the Bankruptcy Act, 11 U.S.C.A. § 107. The delay in the institution of the present plenary suit was seemingly due to the plaintiff's unsuccessful attempt to secure a summary adjudication of his contention before the Referee. The Referee overruled this contention on April 28, 1950. This suit could have been instituted without encountering the bar of the two-year limitation at any time thereafter until October 18, 1950, a period of nearly six months. As the plaintiff insisted on further litigating his contention with regard to summary jurisdiction, I think the defendant is justified in its contention that limitations accrued before this suit was filed.

During the argument of the case counsel for the trustee candidly conceded that he had no sufficient answer to the defense of limitations as applied to the theory of the complaint for recovery of a preference under section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, but contended that the complaint might also be considered as founded on a different theory. I think it quite clear from the complaint itself that the theory advanced therein is for the recovery of a preference. And the trial brief of counsel for the plaintiff supported that theory by the citation of Oppenhimer v. Finance & Guaranty Co., 4 Cir., 5 F.2d 486, applying a Virginia statute. See also In re Sachs, 4 Cir., 30 F.2d 510; In re Greenberg, D.C., 48 F.Supp. 3, and Commercial Credit Co. v. Street, 9 Cir., 65 F.2d 102. The only other theory of the plaintiff's case would be to consider it brought under the authority of section 67d(3), 11 U.S.C.A. § 107d(3) or section 70e of the Bankruptcy Act, 11 U.S.C.A. § 110e, relating to fraudulent or voidable transfers. But if the complaint be so considered it is likewise and equally subject to the defense of limitations. Wells v. Place, D.C.Ohio, 92 F.Supp. 477; Herget v. Central National Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656; Collier on Bankruptcy, 14th Ed., Vol. I, 1951 Cum. Supp. p. 1186, and notes thereon.

The plea of res adjudicata based on the replevin suit is also a good defense. The replevin suit was a suit in rem affecting the right to the possession of and title to property which was begun in the Circuit Court for Baltimore County prior to the filing of the petition in bankruptcy. The replevin suit was conducted to a final conclusion in favor of the plaintiff therein in accordance with the applicable Maryland statutory procedure and judicial decisions. The defendant Leiberman was twice returned non est, and on motion made in the case judgment by default was properly entered and judgment of restitution given for the property involved. See Maryland Code 1939, Art. 75, § 126; Poe's Pleading and Practice, Vol. 2, § 437. It has sometimes been said that replevin is only a possessory action but in a very recent Maryland case, Dermer v. Faunce, 187 Md. 610,

612, 51 A.2d 76, 77, it was said by the court: "In an action for replevin in this State the plaintiff is not only required to prove his right of possession to the property at the time the writ issues, but also to prove his title to the property. This Court said in the case of Tuck v. Bowie, 1 Md. 87, at page 95, 'The action of replevin in this State, requires the plaintiff to prove his title to the property, and also his right of possession at the time the writ issues'." Although the trustee in bankruptcy was appointed on November 17, 1948 and counsel for him appointed on November 30, 1948, he did not at any time intervene in the replevin case. If he had done so and the Maryland courts had upheld his contention as to the effect of the conditional contract of sale, he could have defeated the replevin suit. Thomas Roberts & Co. v. Robinson, 141 Md. 37, 118 A. 198. He excuses his failure to take such action on the ground that he did not learn until about May 19, 1949, more than a month after the final judgment in the replevin suit, about its existence; but as I recall the evidence in this case the bankrupt himself knew that the Soda Fountain Company had repossessed the store equipment and it would seem reasonable to infer that the trustee in bankruptcy could have learned of the existence of the replevin suit if more diligent inquiry had been made from the bankrupt or the attorney who prepared his schedules for him.

▆▆▆ A valid final judgment is binding both upon the immediate parties to the action and to those in privity with them. General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, Inc., 4 Cir., 101 F.2d 178; Walzl v. King, 113 Md. 550, 556, 77 A. 1117; A.L.I.Restatement of Judgments, § 89. The trustee in this case having succeeded to the situation of the bankrupt is bound by the adverse State judgment. Linstroth Wagon Co. v. Ballew, 5 Cir., 149 F. 960, 8 L.R.A.,N.S., 1204; In re Winter, D.C., 17 F.2d 153. The trustee in bankruptcy is bound by a judgment rendered in a suit in rem pending against the bankrupt at the time of adjudication in bankruptcy and whether or not he obtains relief and intervenes in that litigation. Collier on Bankruptcy, 14th Ed. Vol. 1, p. 1170;

Remington on Bankruptcy, 4th Ed. Vol. 5, §§ 2047, 2131; American Jurisprudence, Vol. 6, Bankruptcy, par. 874.

Counsel for the plaintiff here contends that the power of the State court ended on the filing of the petition in bankruptcy and that orders of the State court entered thereafter were a nullity. The only authority cited for this is Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599, which, however, was not a proceeding in rem pending before bankruptcy but related only to the power of a State court after bankruptcy to make binding allowances for fees and costs, to a state court receiver and his attorney. It was not a case where the State court had validly acquired jurisdiction of the subject matter before bankruptcy.

In the aforegoing discussion I have assumed for the purposes of the case that the recording of the conditional sales contract was defective because it was recorded not in Baltimore City where the purchaser resided at the time, but in the adjoining Baltimore County where the plaintiff's store was situated and in which the seller at the purchaser's request placed the equipment. It will be noted in the Maryland statute, Art. 21, § 71, that if the buyer is a corporation or a partnership the proper place to record the contract is in the City or County where the buyer's principal place of business is situated. The statute was recently amended —Maryland Acts of 1949, ch. 430, in a particular not material here. But in the instant case the buyer was an individual and not a partnership; therefore literally at least, the contract was not recorded in accordance with the statute. It is also to be noted that shortly after the buyer opened his new store in Baltimore County he changed his residence to the County near his store. And again shortly after his bankruptcy he moved back to Baltimore City.

▆▆▆ I know of no Maryland case which has applied this particular statute under anything like similar circumstances. And counsel have not called to my attention any judicial decisions of other States under similar recording Acts, in relation to similar facts. The situation naturally inspires a number of questions with regard

to the proper application of the statute to the facts. Of course the purpose of the statute is to give notice to prospective creditors. As a practical matter it would seem more probable that a merchant or vendor asked to give credit to a retail storekeeper for goods to be sold and used in the store would be more likely to consult the records of the County where the store is situated than to inquire from the storekeeper where his personal residence was. See in this connection sec. 6 of the Uniform Conditional Sales Act and commentary thereon, 2a U.L.A. 68, 94. Then another question which occurs is whether the recording in Baltimore County if bad before Leiberman moved to Baltimore County was good thereafter while he resided in the County and up to the time of his bankruptcy. But while these questions are interesting I do not think it necessary or advisable to undertake to answer them in this case, in the absence of any prior expression by the Maryland courts; and, as I have assumed for the purposes of the case, that the literal non-compliance with the statute at the time of recording rendered the sale contract subject to attack by creditors without notice.

Before the Referee the original attack by the trustee in bankruptcy was based on the contention that between the date of the contract, November 1, 1947, and the time of recording, November 7, 1947, there was an intervening creditor without notice which rendered the contract voidable within the principle of Friedman v. Sterling Refrigerator Co., 4 Cir., 104 F.2d 837. See also In re Imperial Brewing Co., 4 Cir., 127 F.2d 766, and Tatelbaum v. National Store Fixture Sales Co., Md., 78 A.2d 228. The name of this creditor was the Carpel Company which on November 4, 1947 sold and delivered to Leiberman groceries or canned goods to the amount of $338, of which $243 still remains unpaid. It is perhaps questionable whether the facts of the particular case require the holding that this particular creditor was an intervening creditor without notice, because the equipment covered by the sales contract had not been fully de-

livered and installed until November 7, 1947, and Leiberman's new store was first opened for business on the following day. However, it seems unnecessary to submit further comment on this particular feature of the case, because if, as I have assumed, the contract was voidable by the trustee by reason of defective recording, counsel for the trustee asked and was given permission by the court, subsequent to the first hearing, to re-open the evidence and has now submitted evidence of another unpaid creditor whose claim arose about Dec. 11, 1947.

■ The plaintiff asserts as an alternative claim the right to recover from the defendant an alleged profit of $1664 arising from a re-sale of the goods mentioned in the conditional sale contract. In this connection I will assume that if there was a profit realized by the defendant, it could be recovered by the trustee in bankruptcy as a right of the bankrupt himself to which the trustee succeeded, and therefore would not be subject to the two-year limitation in the bankruptcy statute, as in the case of a preference, but subject rather to the three-year Maryland statute of limitations. But I find on the evidence in the case that the defendant has not in fact realized any profit from a re-sale of the goods. The conditional sale contract provided that upon the purchaser's default the seller could re-take the goods and treat the payments made as liquidated damages, or re-sell the goods and credit the purchaser with the *proceeds* of re-sale less costs of re-taking. There is evidence that the cost of re-taking was $1299.18. In this case after the defendant had re-taken the goods he made a conditional sale contract to another purchaser (Charmin & D'Anna) for $8,000. On October 1, 1948 the balance then due from the bankrupt to the Soda Fountain Company on their conditional contract of sale was $6,684.48. Deducting the expenses of re-taking from the bankrupt, $1299.18, the net is $6,700.12, thus showing an apparent balance then due the bankrupt of $16.34. (See Defendant's Ex. No. 3.) But the conditional re-sale to Charmin & D'Anna was not consummated because they paid but

$1,000 and promptly defaulted thereafter and the Soda Fountain Company had to again re-take the goods and have held them since then pending the controversy with the trustee in bankruptcy. There is evidence also, which I accept as reasonable, that the value of the goods at the present time in their depreciated condition owing to the two installations and removals and the lapse of time with resultant changes in the style of such fixtures, is only about 50% of their original value. It is evident, therefore, that the Soda Fountain Company has sustained a substantial loss and not a real profit on the whole transaction.

It may also be observed that the main and principal contention of the plaintiff in this case and the primary object of the suit was to recover the goods themselves on the ground that the re-taking of goods by the Soda Fountain Company under the conditional contract of sale to the bankrupt, constituted a preference. The alternative claim for an alleged profit is subordinate to that main contention. While this court clearly had jurisdiction of the principal object of the suit (to vacate a preference) by reason of the provisions of the Bankruptcy Act, there is a serious question as to the jurisdiction of the court to entertain the alternative claim at all because both the bankrupt and the defendant are citizens of Maryland and therefore under 11 U.S. C..A § 46 this court would not have had jurisdiction of the alternative claim if it had been the sole object of the complaint. Counsel for the trustee argues that because the defendant did not expressly object to the jurisdiction of the court with respect to this alternative and subordinate claim, the defendant has thereby waived that point. I have doubt as to the reasonableness of this inference under the circumstances. But in view of the conclusions already reached it seems unnecessary to further discuss this point.

For all these reasons I conclude that the complaint must be dismissed with taxable court costs to be paid by the plaintiff; and it is now so ordered by the court this 4th day of January, 1952.